IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIFFANY HUGHES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 2:17-cv-225-ALB ) [WO] |
| WAL-MART STORES EAST, LP, and MICHAEL R. HARRIS, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination lawsuit pursuant to the Americans with Disabilities Act of 1990 ("ADA"), codified at 42 U.S.C. § 12101, et seq., as amended, between Tiffany Hughes ("Plaintiff"), her former employer Wal-Mart Stores East, LP ("Wal-Mart"), and former co-worker Michael R. "Rusty" Harris (collectively, "Defendants"). This matter comes before the court on Defendants' Motion for Summary Judgment (Doc. 77). The motion has been fully briefed and is ripe for decision.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1343 as to Plaintiff's federal causes of action, and the Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest

personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish - with evidence beyond the pleadings - that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. BACKGROUND

Plaintiff is a pharmacist who was employed by Wal-Mart primarily at its Prattville, Alabama location. Defendant Harris was employed as Wal-Mart's Market Health and Wellness Director for a group of stores including the Prattville location. Plaintiff acknowledges that Harris was in her "chain of command as a member of the 'Market Leadership Team.'" (Doc. 30 at 15). In 2015, Plaintiff sought accommodations for various medical conditions, specifically, that she be allowed to use a stool during her shifts and that she be excused from giving injections. Wal-Mart approved both of those accommodations on November 5, 2015. On January 7, 2016, Plaintiff filed her first charge with the Equal Employment Opportunity Commission ("EEOC") alleging retaliatory activity prohibited by the ADA, specifically, that she had not yet been provided with an OSHA-approved stool to accommodate her disability. Plaintiff's stool arrived at the pharmacy in February 2016.

On April 5, 2016, Wal-Mart's Health and Wellness Compliance Department sent an email to Plaintiff requesting that she complete a Conflict of Interest survey ("COI"). Although Plaintiff had previously submitted COIs as required, she delayed submitting her COI in 2016, claiming that she was afraid any mistakes on the form would be used as a basis to terminate her employment. There is no dispute that a COI is required of all pharmacists employed by Wal-Mart.

On July 6, 2016, Harris visited the pharmacy while Plaintiff was at work. Harris attempted to discuss the COI and Wal-Mart's dress code with Plaintiff. Although there are disputes as to particular statements made that day, it is beyond dispute that Harris and Plaintiff engaged in a verbal confrontation which included raised voices in the presence of customers and employees. Plaintiff refused to complete her COI that day. Harris relieved Plaintiff of her duties for the remainder of her shift and informed her that she was suspended with pay. When Plaintiff began to make phone calls to various Wal-Mart corporate numbers instead of leaving, Harris informed Plaintiff that she was suspended without pay. At some point during this interaction, Plaintiff alleges that Harris said she was "unfit" while directing her to leave the pharmacy. Plaintiff eventually left the pharmacy.

Defendants sent Plaintiff a letter giving her until July 31, 2016, to submit her COI or her employment would be terminated. Defendants received Plaintiff's completed COI on July 29, 2016. By a letter dated August 9, 2016, Wal-Mart

informed Plaintiff that she would be placed back on the schedule as of August 17, 2016, but required that she "communicate with your leadership team, including engaging in discussions with [Harris]" before resuming her duties. (Doc. 78-10 at 102). The letter further stated that "If you choose not to confer with the leadership team, please let me know, and we will respond accordingly and place you on a 30 day personal leave of absence so you can find another available position for which you are qualified." *Id.* Plaintiff responded to Harris that she wished to be placed back on the schedule but refused to meet with him or the leadership team. Wal-Mart placed Plaintiff on leave until September 16, 2016, and terminated her employment on September 27, 2016.

On October 1, 2017, Plaintiff's husband presented a prescription for Plaintiff at Wal-Mart's pharmacy in Millbrook, Alabama. The prescription triggered a "red flag" in the computer system because of another prescription that Plaintiff was already taking. Pursuant to store policy, the pharmacist called another Wal-Mart pharmacist for a professional opinion and called Plaintiff's prescribing physician for clarification. The treating physician withdrew the prescription, and Wal-Mart did not fill the prescription.

On August 22, 2016, Plaintiff filed a second charge with the EEOC, again alleging retaliatory activity prohibited by the ADA. On January 13, 2017, the EEOC issue Plaintiff a Notice of Right to Sue. Plaintiff filed her Complaint in this Court on

5

April 17, 2017, and an Amended Complaint on February 1, 2018, which is the operative pleading for this case. Plaintiff averred the following counts:

Count I & II – Retaliation under ADA.
Count III – Defamation.
Count IV – Invasion of Privacy.
Count V – Various Tort Claims.
Count VI – Conspiracy.

The Court dismissed Plaintiff's claims for invasion of privacy based on publicity, tortious conduct, and conspiracy. (Doc. 50). Defendants filed a motion seeking summary judgment as to Plaintiff's remaining claims.

## IV. DISCUSSION

### A. Invasion of Privacy – Intrusion Upon Seclusion

Plaintiff's Invasion of Privacy claim is before the Court only on the theory of Intrusion on Seclusion. (Doc. 50 ¶ 2). Both parties cite *Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 324 (Ala. 1989)("The question, then, is whether there was an offensive or objectionable prying or intrusion into the plaintiffs' private affairs or concerns."). "[T]here must be something in the nature of prying or intrusion" and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." *Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988), quoting W. Prosser & W. Keeton, *The Law of Torts,* p. 851 (5th ed. 1984).

The magistrate's Recommendation on the motion to dismiss, which the Court adopted, noted that Plaintiff's claim was based on two incidents: "(1) Defendants discussing Plaintiff's alleged unfitness with her coworker and in front of Wal-Mart customers (2) Defendants discussing information regarding Plaintiff's health, including the status of her prescriptions for pain medication, with her co-workers." (Doc. 47 at 10-11). Plaintiff argues that "[n]othing about [Plaintiff's] claims of invasion of privacy have changed" and that "the evidence is now in place to support this claim." (Doc. 81 at 57). However, Plaintiff fails to cite any evidence in the record to support either scenario. In her affidavit submitted in opposition to summary judgment, Plaintiff stated that "with numerous customers standing at or near the pharmacy counter, Rusty [Harris] declared that I was unfit to continue my duties as a pharmacist, and he was sending me home." (Doc. 85-15 ¶ 107). Plaintiff testified that

> He told me he was sending me home for the rest of the shift. I asked him why he was doing this and I asked him repeatedly what the terminology unfit meant. And I asked him what credentials do you have to deem me unfit and what criteria are you using to determine me to be unfit and Rusty said, "I don't even know what that means."

(Doc. 78-10 at 37). Plaintiff testified that Harris said, "I deem you to be unfit, and you are to leave work." There is nothing in that statement which intrudes or pries into a private aspect of Plaintiff's life. That Plaintiff or a reasonable person could find the statement offensive is not sufficient. The statement, even construed in the

7

light most favorable to Plaintiff, is not an intrusion or prying into an actual private matter.

As to Plaintiff's claim that Defendants intruded upon her seclusion by discussing information about her healthcare with coworkers, again, Plaintiff fails to cite to any authority or evidence in the record to support this claim aside from what she presented at the motion-to-dismiss stage of litigation. It is axiomatic that "[a] party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). As to her claim of intrusion on seclusion, that is exactly what Plaintiff has failed to do. The evidence in the record is clear that the only communication that occurred between Plaintiff's coworkers was professional consultation regarding prescriptions that she chose to present to Wal-Mart pharmacies, which Plaintiff admitted was accordingly to policy. (Doc. 78-10 at 56). In fact, Plaintiff admitted that every action taken by the pharmacist was according to policies she herself had followed as a pharmacist and that her chief complaint about this incident was that the pharmacist did not call her "to get the background." *Id*. Plaintiff points to no law, fact, or policy that would entitle her to relief based on the handling of this prescription. Specifically, Plaintiff

8

failed to demonstrate that any Defendant intruded or pried into her private matters or shared private information with parties not subject to professional confidentiality.

B. **Retaliation**

In order to prove an ADA retaliation claim, a plaintiff must show that: (1) she "engaged in conduct protected by the ADA"; (2) she "was subjected to an adverse employment action at the time, or after the protected conduct took place"; and (3) the defendant "took an adverse employment action against [her] because of [her] protected conduct." 3C Fed. Jury Prac. & Instr. § 172.24 (5th ed.) (essential elements for an ADA retaliation claim). *See also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1158 (11th Cir. 2005). Defendants argue as to Plaintiff's retaliation claims (Counts I & II) that Plaintiff was subject to "the normal application of workplace standards not covered by her accommodation," that the "managers' decisions [were] not retaliatory," and that Plaintiff engaged in "flagrant insubordination in response to reasonable requests from her manager." (Doc. 77 at 25). In her Amended Complaint, Plaintiff alleges that "On July 6, 2016, Harris targeted and harassed Mrs. Hughes in retaliation for filing the first charge, singling her out for having previously worn open toed shoes when other female pharmacy employees regularly wore open toed shoes (and upon information and belief, continue to wear open toed shoes), and also demanding immediate completion of the conflict of interest form even though no prior deadline to complete the form had

9

been communicated to her." The "first charge" refers to EEOC Charge number 420-2016-00752, which Plaintiff filed on January 7, 2016. (Doc. 78-10 at 105). Plaintiff's narrative statement in the First Charge deals exclusively with the issue of a stool as a form of accommodation. Plaintiff never requested that Wal-Mart grant an accommodation for open-toed shoes, and she did not lodge an allegation with the EEOC regarding open-toed shoes until she filed her Second Charge, number 420-2016-03224, on August 22, 2016. (Doc. 1-1). Plaintiff never complained in her EEOC Charges that she experienced any discrimination for requesting and receiving an excuse from administering immunizations, which was granted in the same letter as her request for a stool in November 2015. (Doc. 78-10 at 99).

Plaintiff argues in response to the motion for summary judgment that the initial denial of her request for an accommodation to use a stool in 2015 demonstrates pretext.[1] However, her Amended Complaint states that the First Charge was the protected activity against which the Defendants retaliated, not the

---

[1] Plaintiff concedes that the protected actions of which she complains did not occur "within presumptively close temporal proximity" of her First Charge, and that her allegation of retaliation "goes to the 'pretext' element under the *McDonnell-Douglas* framework…" (Doc. 81 at 31). In this case, Wal-Mart's knowledge of the protected activity and the adverse employment action well exceed the three to four month range. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

initial request.[2] Moreover, Plaintiff's initial request is even more temporally removed from the adverse employment action by nearly a year.

Plaintiff concedes that she "received a message from Wal-Mart corporate Health & Wellness Compliance on May 17, 2016, notifying her that she was delinquent in completing the Conflict of Interest form in accordance with Wal-mart policy located at POM 1723." (Doc. 81 at 42). Plaintiff does not dispute that the COI was legitimately required by Wal-Mart or that any other pharmacists were not subject to or excused from complying with the policy. Plaintiff's explanation that she was afraid that a misstatement on her COI would be grounds for termination does not obviate the need for her to complete it. Rather, Plaintiff alleges that Defendants used her non-compliance with company policy to retaliate against her for filing her First Charge. By Plaintiff's own admission, the "pretext" which she alleges for her termination was not her refusal to submit her COI disclosure, which she eventually did. Rather, Plaintiff acknowledges that she refused to comply with what she terms the "ridiculous and unnecessary requirement to meet … one-on-one" with Harris, Wal-Mart's Market Health and Wellness Director for the pharmacy

---

[2] The record indicates that Defendants never denied Plaintiff's request for a stool as an accommodation. Rather, Defendants required Plaintiff to use the official corporate procedures for such a request rather than the determination being made in the specific location where she was currently assigned.

11

where she was employed and who was in her "chain of command as a member of the 'Market Leadership Team.'" (Doc. 30 at 15).

After submitting her COI, Defendants informed Plaintiff of the steps that she would be required to meet before resuming her duties. Defendant Harris's letter on behalf of Wal-Mart required that Plaintiff "communicate with your leadership team, including discussions with me." (Doc. 78-10 at 102). There is no testimony or documentation in the record to support the allegation that she was required to meet "one-on-one" with Harris without any other witnesses present, much less that this meeting to discuss "concerns and expectations about your behavior and performance going forward" bore any relation to her EEOC complaint. Moreover, Plaintiff submitted copies of text messages which she sent to Harris stating that "I respectfully decline a meeting with you or any 'leadership team member' that is documented as having committed disability-based retaliation, defamation of character, harassment, or any other charge." (Doc. 82-7 at 9). It is undisputed that after Plaintiff complied with submitting her COI form, Defendants had offered her a date to return to work with only one requirement: that she meet with her leadership team. Plaintiff declined that invitation, stating that she failed "to find any positive outcome that would develop from a meeting to discuss my 'behavior and performance going forward,' whatever that may mean…" *Id.* Plaintiff's affidavit makes her intent as clear as

possible: "I even told Rusty [Harris] that I was willing to return to work, but I was not willing to meet with him." (Doc. 85-15 ¶ 115).

The Eleventh Circuit has rejected the proposition that an employee may engage in acts of insubordination simply because they occurred around the time of a request for accommodations.

> Whatever the obligations of an employer are under the ADA to accommodate an employee, they do not extend to engaging in generalized negotiations with an employee concerning the employer's workplace rules and policies for all employees. As we have stated before, the ADA is "remedial in nature—ensuring that those with disabilities can fully participate in all aspects of society, including the workplace." *Willis,* 108 F.3d at 285. The ADA thus requires that employers reasonably accommodate qualified individuals with a disability, not that employers negotiate with disabled individuals on behalf of all workers, disabled or not. *See* 42 U.S.C. § 12111(9)(B) (discussing accommodations that must be offered "for *individuals with disabilities* ") (emphasis added).

*Stewart*, 117 F.3d at 1286.

Wal-Mart's COI requirement predates Plaintiff's protected action. It is undisputed that Plaintiff complied with the COI filings before she requested any accommodations. The record further supports that the COI disclosure form had been sent to her on April 5, 2016. (Doc. 78-10 at 101). The record reflects that Plaintiff expressed no concerns to the Defendants about filing the COI until it was delinquent. More to the point, there is no dispute that once Plaintiff submitted her COI, the Defendants offered a specific date to resume her employment if she would meet with her management team. There is no dispute that Plaintiff flatly refused to meet with

13

any member of the management or leadership team to which she was directly subordinate.

Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, she cannot establish a prima facie case of retaliation. Plaintiff argues "[t]he frequency with which Tiffany received repeated adverse employment actions from approximately June of 2015 through July 2016 was too often to be coincidental." (Doc. 81 at 34). Yet there is no indication in the record that she made any request that could be construed as a protected activity until September 9, 2015, three months after she alleges to have begun receiving adverse employment actions. All of Plaintiff's requested accommodations were granted. Several months later, her refusal to comply with a company-wide policy degenerated into a shouting match with a manager specifically because she wanted to make sure that unrelated people around her heard the exchange.

Even after the July 6, 2016 confrontation, the record reflects that the Defendants made clear, delineated requests in writing to Plaintiff to submit her COI and meet with management, to which she responded with last-minute compliance and counter-demands to circumvent interacting with the very people responsible for her supervision. The ADA does not require an employer to accommodate noncompliance unrelated to the employee's disability in perpetuity simply because the employee has previously requested and received other completely unrelated

accommodations. Plaintiff has failed to offer evidence that the reason for terminating Plaintiff's employment, i.e., that she refused to meet with her own management team before returning to work after a loud public exchange with management, was false, much less pretextual. In the absence of any evidence that the reason for the termination of Plaintiff's employment was false or pretextual, summary judgment is due as to this claim.

C. **Defamation**

Defendants argue that Plaintiff fails to meet several of the required elements of defamation. Plaintiff argues in response that Harris declaring her "unfit" "is slanderous per se." (Doc. 81 at 54). Under Alabama law, a claim for defamation requires "a false and defamatory statement concerning the plaintiff." *Skinner v. Bevans,* 116 So. 3d 1147, 1156 (Ala. Civ. App. 2012). Whether a statement "is reasonably capable of a defamatory meaning, in the first instance, is a question of law." *Finebaum v. Coulter,* 854 So.2d 1120, 1128 (Ala. 2003) (citation and internal quotation marks omitted). "[T]he test to be applied ... in determining the defamatory nature of an imputation is that meaning which would be ascribed to the language by a reader or listener of ordinary or average intelligence, or by a common mind." *Id.* (citation and internal quotation marks omitted).

> One cannot recover in a defamation action because of another's expression of an opinion based upon disclosed, nondefamatory facts, no matter how derogatory the expression may be. *Restatement (Second) of Torts* § 566 cmt. c (1977). This is so because the recipient of the

15

> information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed, nondefamatory facts. *Redco Corp. v. CBS, Inc.,* 758 F.2d 970, 972 (3d Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 107 (1985).

*Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000); *see also Bell v. Smith*, No. 1171108, 2019 WL 1305886, at *7 (Ala. Mar. 22, 2019)("Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties.") (citation and internal quotation marks omitted); *Williams v. Marcum*, 519 So. 2d 473, 477 (Ala. 1987)("The law is clear that an opinion can never be false. Because a statement must be false to be actionable defamation, an opinion is simply not actionable defamation. *Lewis v. Time, Inc.,* 710 F.2d 549 (9th Cir.1983).").

Even construing the evidence in the manner most favorable to the Plaintiff, the allegedly defamatory communication did not occur without context. It is beyond dispute that Plaintiff and Harris had engaged in multiple, tense, verbal exchanges on July 6, 2016. Plaintiff admits that after being told she was relieved for the remainder of her shift and suspended with pay, she refused to leave the pharmacy and continued to make phone calls in the pharmacy. Although Plaintiff denies "yelling," she admits that she raised her voice "and I repeatedly asked him what the terminology unfit meant. And I asked him what credentials do you have to deem me unfit and what criteria are you using to determine me to be unfit and Rusty said, 'I don't even know

16

what that means.'" (Doc. 78-10 at 37). By Plaintiff's own account of the encounter, a member of her leadership team informed her that she was being sent home from a shift, she refused to leave when directed, she did not know what Harris meant by unfit, and his own usage of the word had nothing to do with her professional credentials. This is further supported by Plaintiff's testimony that Harris told her "Now we are suspending you without pay. We'll call you back when we need you." (Doc. 78-10 at 38). No reasonable person could conclude that Harris was publicly declaring Plaintiff to be unfit to practice pharmacy and in the same breath acknowledging that he intended to bring her back to work in the future.

The record is devoid of any indication that Harris or any other employee of Wal-Mart questioned Plaintiff's competency as a pharmacist. The record is clear that on July 6, 2016, the disclosed, nondefamatory facts are that Plaintiff refused to complete a COI form, refused to leave the pharmacy when she was told she was relieved for the remainder of her shift, and raised her voice specifically because she wanted the people around her to be able to hear the argument she was having with Harris. Any reasonable observer would realize that to the extent that Harris declared Plaintiff to be "unfit," it was his opinion as a member of management. The utterance must be considered in the context it was used, i.e., as a manager relieving an insubordinate employee from her shift. The expression was derogatory and unpleasant. However, in light of the facts as recounted by Plaintiff of their

17

interactions that day, Harris's opinion was his own based on Plaintiff's "behavior and performance" at her job, not her competency to perform the regulated duties of that job. Federal courts do not second guess an employer's management decisions. "No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, the [law] does not interfere." *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991). Harris's managerial decision and expressed opinion that Plaintiff was unfit to finish her shift that day, no matter how derogatory or even wrong, was his opinion which cannot be false or defamatory.

## V. CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment is GRANTED. A final judgment will be entered by separate order.

**DONE** and **ORDERED** this 14th day of November 2019.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE